## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| _____ : | |
| PELOTON INTERACTIVE, INC, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Court No. 20-01572 |
| : | |
| UNITED STATES OF AMERICA; : | |
| OFFICE OF THE UNITED STATES TRADE : | |
| REPRESENTATIVE; ROBERT E. LIGHTHIZER, U.S. : | |
| TRADE REPRESENTATIVE; U.S. CUSTOMS & : | |
| BORDER PROTECTION; MARK A. MORGAN, U.S. : | |
| CUSTOMS & BORDER PROTECTION ACTING : | |
| COMMISSIONER, : | |
| : | |
| Defendants. : | |
| _____: | |

## **COMPLAINT**

Plaintiff Peloton Interactive, Inc. ("Peloton" or "Plaintiff"), by and through its undersigned attorneys, alleges and states as follows:

1.      This action concerns Defendants' unlawful imposition of tariffs on $500 billion in imports from China to be paid by U.S. importers and consumers. This Complaint focuses on Defendants' imposition of certain tariffs beyond the scope of the relevant statutory authorization.

2.      The Trade Act of 1974 ("Trade Act") delineates clear limits on the economic measures that may lawfully be taken under its authority. Defendants initiated tariffs against goods from China based on an investigation by the Office of the United States Trade Representative ("USTR"), in which USTR reviewed China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411). Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to determine what action to take, if any, within 12 months after initiation of that investigation. USTR issued two rounds of tariffs (known as List 1

and List 2) under the findings of the investigation, affecting $50 billion in imports. Subsequently, and after the time limit required by the Trade Act, USTR issued new tariffs on an additional $500 billion of imports from China, known as List 3 and List 4. Section 307 of the Trade Act (19 U.S.C. § 2417) does not permit USTR to expand the imposition of tariffs to other imports from China for reasons untethered to the unfair intellectual property policies and practices it originally investigated under Section 301. USTR issued List 3 and List 4 tariffs in response to China's retaliatory duties and other unrelated issues, stating that the List 1 and List 2 tariffs were "no longer appropriate." But the relevant provisions of the Trade Act (19 U.S.C. § 2417) do not permit USTR to expand the imposition of tariffs to other imports from China for reasons untethered to the unfair intellectual property policies and practices it originally investigated under Section 301. Rather, § 2417 permits USTR only to delay, taper, or terminate the actions it has already taken, and not to increase them more than ten-fold as Defendants did in this matter.

3. In addition, the arbitrary manner in which Defendants implemented the List 3 and List 4 tariff actions violates the Administrative Procedure Act ("APA"). As discussed below, USTR (1) failed to provide sufficient opportunity for comment; (2) failed to consider relevant factors when making its decision; and (3) failed to connect the record facts to the actions it took.

4. Accordingly, for these reasons, which are set forth in greater detail below, the Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, and further order Defendants to refund (with interest) any duties paid by Plaintiff pursuant to List 3 and List 4.

## **JURISDICTION**

5. The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action

commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## **PARTIES**

6.    Plaintiff Peloton is a Delaware corporation with its headquarters located at 125 West 25th Street, 11th Floor, New York, NY 10001. Peloton is an American exercise equipment and media company, and an importer and seller of, *inter alia*, exercise bikes, exercise bike accessories, and related products. Peloton employs over 3,500 individuals, most of whom are based in the United States, and generated more than $1.84 billion in annual revenue in its fiscal year that ended June 30, 2020.

7.    Between September 2018 and September 2020, Peloton has made numerous entries of products classified under multiple HTSUS subheadings, which are subject to the additional *ad valorem* duties under List 3 and List 4.

8.    Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9.    USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4.

10.    Ambassador Robert Lighthizer currently holds the position of USTR and serves as the director of USTR. In these capacities, he made numerous decisions regarding List 3 and List 4.

11.    Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiff under List 3 and List 4.

## STANDING

12.    Peloton has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; see 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants pursuant to List 3 and List 4 adversely affected and aggrieved Peloton because to date it was required to pay an amount not less than $3,985,420.22 of these unlawful duties.[1] Further, Peloton has absorbed the cost of these unlawful duties to limit the impact on customers and to remain competitively positioned in the market, without increasing its prices to U.S. consumers.

## TIMELINESS OF THE ACTION

13.    A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

14.    The instant action contests actions taken by Defendants that resulted in List 3 and List 4. Plaintiff's claim accrued at the earliest on September 21, 2018, when USTR published notice of List 3 in the *Federal Register. Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018). USTR published notice of List 4 in the

---

[1] We note that Peloton has filed post-summary corrections ("PSCs") for certain entries subject to the List 4 exclusion for parts and accessories for the exercise machines of subheading 9501.91.0030. If refunded, these PSCs would amount to $682,665.06 in duties paid on the qualifying parts and accessories over the last year.

*Federal Register* on August 20, 2019. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). Plaintiff has therefore timely filed this action.

## RELEVANT LAW

15.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. *Id*. § 2411(b), (c)(1)(B).

16.     Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. *Id*. § 2414(a)(1)(B), (2)(B).

17.     Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id*. § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

I.     **USTR's Investigation**

18.     On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology:

> The United States is a world leader in research-and-development-intensive, high-technology goods. Violations of intellectual

> property rights and other unfair technology transfers potentially threaten United States firms by undermining their ability to compete fairly in the global market. China has implemented laws, policies, and practices and has taken actions related to intellectual property, innovation, and technology that may encourage or require the transfer of American technology and intellectual property to enterprises in China or that may otherwise negatively affect American economic interests. These laws, policies, practices, and actions may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation.

*Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).

19.     On August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

20.     On March 22, 2018, USTR released a report announcing the results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id*. at 17. USTR based its findings on (1) China's use of foreign

ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171. USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

21.     On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

## II.     List 1 and List 2

22.     Within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B), Defendants undertook a series of actions to remedy

the estimated harm to the U.S. economy identified in USTR's investigation of unfair practices, culminating in the imposition of duties on imports from China covered by List 1 and List 2.

23.     On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907. USTR explained: "The total value of imports subject to the tariff increase is *commensurate* with an economic analysis of the *harm* caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr (emphasis added).

24.     On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*. *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710-01 (June 20, 2018). This list is commonly referred to as "List 1."  USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id.* at 28,711.

25.     At the same time that it finalized List 1, USTR announced it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products, explaining, "Including these tariff subheadings in the Section 301 action would maintain the effectiveness of a $50 billion trade action." *Id.* at 28,712. USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711-12.

26.     On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem*, comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018). This list is commonly referred to as "List 2."

## III.   List 3 and List 4

27.     In the months that followed the announcement of USTR's investigation, Defendants expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion. This is ten times the amount USTR previously had determined was "*commensurate*" with the "*harm*" caused by China's unreasonable technology transfer policies it investigated under Section 301.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr (emphasis added). As discussed below, Defendants' imposition of these additional tariffs had nothing to do with the unfair practices USTR had investigated, but instead were premised on the tit-for-tat imposition of retaliatory tariffs.

A.      **List 3**

28.      Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China threatened to impose retaliatory duties on the same value of imports from the United States.  President Trump responded with the following direction to USTR: "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation."

> Rather than remedy its misconduct, China has chosen to harm our farmers and manufacturers.  *In light of China's unfair* <u>*retaliation*</u>, I have instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under section 301 and, if so, to identify the products upon which to impose such tariffs.

THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/ (emphasis added).

29.      When USTR finalized List 1 in mid-June 2018, President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States. *E.g.*, Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods*, THE HILL (June 15, 2018), *available at* http://thehill.com/homenews/administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods ("The president said the United States will pursue additional tariffs if China retaliates 'such as imposing new tariffs on United States goods, services or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.'").

30.      Following through on his warning, and before USTR even had a chance to implement List 1 and List 2, President Trump on June 18, 2018 formally directed USTR to

consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion. President Trump admitted China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision:

> China has determined that it will raise tariffs on $50 billion worth of United States exports. . . . *This latest action by China* clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.

THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ (emphasis added).

31.     Acknowledging the purpose of the President's directive, USTR expressly stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press- releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

32.     China then retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United

States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

33.     About a week after China imposed its first round of retaliatory duties, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608-01, 33,608 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id*. at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)). USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

34.     In its notice, USTR confirmed it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action:

> The Government of China has chosen to respond to the initial U.S. action in the investigation by imposing retaliatory tariffs on U.S. goods, instead of addressing U.S. concerns with the unfair practices found in the investigation.
>
> . . . *In light of China's response to the $50 billion action announced in the investigation* . . . , it has become apparent that U.S. action at this level is not sufficient .
>
> . . . Supplemental action at a $200 billion level is in accord with the President's direction. In addition, action at this level is appropriate *in light of China's announced retaliatory action ($50 billion) and*

-12-

> the level of Chinese goods imposed into the United States ($505 billion in 2017). China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017). In order to enhance effectiveness, the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports.

*Id.* at 33,608-09 (emphasis added). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id.*

35.     USTR's contemporaneous press statements corroborated the contents of its notice, and emphasized the connection to retaliatory tariffs rather than to USTR's investigative findings under Section 301. For example, Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about- us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

36.     That same day, President Trump suggested that the United States' trade imbalance with China supported the decision. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209. Over the following weeks, President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. *See, e.g.*, @realDonaldTrump, Twitter (July 20, 2018,   8:43   AM   EDT), https://twitter.com/realDonaldTrump/status/1020287981020729 344; @realDonaldTrump, TWITTER (July 20, 2018, 8:51 AM EDT), https://twitter.com/real

Donald Trump/status/1020290163933630464; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; @realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonald Trump/status/1022074252999225344.

37.     Within days of these statements, Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. Again, rather than address the practices USTR investigated pursuant to Section 301 of the Trade Act, Ambassador Lighthizer stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/state ment-us-trade-representative.

38.     On August 7, 2018, USTR, at the direction of President Trump, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policy- offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

39.     USTR also adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both initial *and* rebuttal comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR further limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. These obstacles notwithstanding, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id.*

40.     Just eleven days after final comments were received on USTR's proposed rulemaking, President Trump announced he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/. Once again, the President made clear China's retaliation to List 1 and List 2 motivated his decision, and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries." *Id.*

41.     On September 21, 2018, USTR published notice of the final list of products subject to an additional duty. 83 Fed. Reg. at 47,974. USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019. *Id.* This list is commonly referred to as "List 3." USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* USTR did not respond to any of the over 6,000 comments it received or any of the testimony provided by the roughly 350

witnesses who testified during the public comment period for its proposed rulemaking leading up to the promulgation of List 3. *Id.*

42.     Instead, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.* (brackets omitted). USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

43.     In the months that followed, China and the United States conducted trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10% to 25%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

44.     The trade negotiations ultimately failed. In May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. Unlike with past imposition of new tariffs, USTR did not seek public comment but rather simply summarily announced the increase. *Id.*

45.     Recognizing that List 3 would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, USTR in June 2019 invited the public to seek exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).

46.     The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR extended its originally granted exclusions from the List 3 duties. *See, e.g.*, *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

**B.     List 4**

-17-

47.     On May 17, 2019, a mere eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with another list covering even more products subject to additional duties.  Under USTR's proposal, this list would impose an additional duty of 25% *ad valorem* on products worth $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). USTR explained its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

48.     USTR invited the public to comment on the proposed list and to participate in a hearing. *Id.* The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. However, the timeline for participation in the hearing left little room for meaningful input. USTR required witnesses to submit drafts of their testimony by June 10, 2019, which was only seven days before the deadline for written comments. And as it had done with its promulgation of List 3, USTR limited witnesses to five minutes of testimony at the hearing for the proposed list that ultimately would become List 4. *Id.*

49.     On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*. @realDonaldTrump, Twitter (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/real DonaldTrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

50.     On August 20, 2019, USTR issued a final notice adopting what is commonly

referred to as "List 4" in two tranches. *Notice of Modification of Section 301 Action: China's*

*Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10% *ad valorem* duty

on goods worth roughly $120 billion, effective September 1, 2019. *Id.* at 43,304. List 4B would

impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on

health, safety, national security, and other factors"), effective December 15, 2019. *Id.* at 43,305.

As before, USTR did not meaningfully address any of the nearly 3,000 comments submitted or

any of the testimony provided by witnesses.

51.     Instead, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating

that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he

burden or restriction on United States commerce" imposed by the investigated foreign country

practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id.* at

43,304. But instead of finding any increased burden on U.S. commerce from the practices that

were the subject of USTR's investigation, USTR merely pointed to "China's subsequent

defensive actions taken to maintain those unfair acts, policies, and practices as determined in that

investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during

negotiations, and devaluing its currency. *Id.*

52.     Just ten days later, USTR published notice of its decision to increase the tariff rate

applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of*

*Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).  USTR explained that

it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded

by announcing further tariffs on U.S. goods." *Id.* at 45,822. USTR once again cited China's

retreat from its negotiation commitments and devaluation of its currency as grounds for action.

*Id.*

53. Between October 31, 2019, and January 31, 2020, USTR provided a portal for

importers to request exclusions from List 4 tariffs. *Procedures for Requests To Exclude*

*Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,*

84 Fed. Reg. 57,144 (Oct. 24, 2019). On August 14, 2020, Peloton filed a request for an

extension of an exclusion from List 4 for parts and accessories for the exercise machines of

subheading 9501.91.0030.  Just 14 days later, on August 28, 2020, the USTR denied Peloton's

request.

54. On December 18, 2019, as a result of negotiating a limited trade agreement with

China, USTR published notice that it would "suspend indefinitely the imposition of additional

duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section*

*301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

*Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its

intent to reduce the tariff rate applicable to products covered by List 4A. *Id.* Effective February

14, 2020, USTR reduced the applicable duty rate for List 4A, from 15% to 7.5%. *Notice of*

*Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

55. In the months that followed, the United States and China implemented the limited

trade agreement they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE

REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019),

-20-

https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-and-china-reach.

56.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint. Although the proposed duties on products covered by List 4B remain suspended, President Trump has continued to threaten to impose them if China does not meet its obligations under their limited trade deal.  *See, e.g.*, @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618 ("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

<u>**STATEMENT OF CLAIMS**</u>

<u>**COUNT ONE**</u>

<u>**(DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)**</u>

57.     Paragraphs 1 through 56 are restated and incorporated by reference as if fully stated herein.

58.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

59.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4 tariffs.

60.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate."

19 U.S.C. § 2411(b). USTR failed to predicate its actions giving rise to List 3 and List 4 on any such determination.

61.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's actions giving rise to List 3 and List 4 occurred in September 2018 and August 2019, respectively. Both thus were taken over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

62.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.  Congress did not authorize USTR to escalate its initial investigatory findings into a ten-fold increase in the volume of imports subject to Section 301 tariffs.

63.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

64.     Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4 are *ultra vires* and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

65.     Paragraphs 1 through 64 are restated and incorporated by reference as if fully stated herein.

66.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

67.     Defendants exceeded the authority granted by the Trade Act in promulgating List 3 and List 4 and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

68.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

69.     Defendants also promulgated List 3 and List 4 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3 and List 4 whose value exceeds $500 billion.

* * *

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court

 (1) declare that Defendants' actions resulting in tariffs on products covered by List 3 and List 4 are unauthorized by, and contrary to, the Trade Act;

 (2) declare that Defendants arbitrarily and unlawfully promulgated List 3 and List 4 in violation of the APA;

 (3) vacate the List 3 and List 4 rulemakings;

 (4) order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 3 and List 4;

 (5) permanently enjoin Defendants from applying List 3 and List 4 against Plaintiff and collecting any duties from Plaintiff pursuant to List 3 and List 4;

 (6) award Plaintiff their costs and reasonable attorney fees; and

 (7) grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ *Kari M. Rollins*
Kari M. Rollins
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112-0015
Telephone: (212) 653-8700
Facsimile: (917) 438-6173
krollins@sheppardmullin.com

Christopher M. Loveland
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, N.W. Suite 100
Washington, DC  20006-6801
Telephone:  (202) 747-1900
Facsimile:  (202) 747-1901

Dated: September 18, 2020  cloveland@sheppardmullin.com

Counsel to Peloton Interactive, Inc.

OF COUNSEL:

Fatema K. Merchant, Esq.
Nikole R. Snyder, Esq.
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, DC  20006-6801
Telephone:  (202) 747-1900
Facsimile:  (202) 747-1901
fmerchant@sheppardmullin.com
nsnyder@sheppardmullin.com